<pre>
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3   TYRONE HOOD,                    )  No. 16 C 1970
                                     )
 4                    Plaintiff,     )  Chicago, Illinois
                                     )  March 22, 2016
 5                                   )  9:30 o'clock a.m.
     -vs-                            )
 6                                   )
                                     )
 7   CITY OF CHICAGO, et al.,        )
                                     )
                      Defendants.    )
 8

 9            TRANSCRIPT OF PROCEEDINGS - STATUS
          BEFORE THE HONORABLE MILTON I. SHADUR
10
     APPEARANCES:
11
     For the Plaintiff:       LOEVY & LOEVY
12                            BY:  MS. HEATHER LEWIS DONNELL
                                   MS. GAYLE M. HORN
13                            312 North May Street
                              Suite 100
14                            Chicago, Illinois 60607

15
     For the Defendant        THE SOTOS LAW FIRM, P.C.
16   City of Chicago:         BY:  MR. JEFFREY N. GIVEN
                                   MS. JACLYN L. McANDREW
17                            550 East Devon Avenue
                              Suite 150
18                            Itasca, Illinois 60143

19   For defendant police     ROCK FUSCO & CONNELLY, LLC
     officers:                BY:  MS. EILEEN E. ROSEN
20                            321 North Clark Street
                              Suite 2200
21                            Chicago, Illinois 60654

22

23   Court Reporter:          ROSEMARY SCARPELLI
                              219 South Dearborn Street
24                            Room 2304A
                              Chicago, Illinois  60604
25                            (312) 435-5815
</pre>

1           THE CLERK:  16 C 1970, Hood versus City of Chicago.

2    I have to connect the one attorney.

3    Hold on, I am going to call your case.

4           MS. HORN:  Thank you so much.

5           THE CLERK:  16 C 1970, Hood versus City of Chicago.

6           THE COURT:  Counsel out in telephone land, do you

7    want to identify yourself for the record, please.

8           MS. HORN:  Yes, your Honor, this is Gayle Horn on

9    behalf of the plaintiff Hood.

10          MS. DONNELL:  Good morning, your Honor, Heather

11   Lewis Donnell on behalf of the plaintiff, Mr. Hood.

12          MR. GIVEN:  Good morning, your Honor, Jeff Given

13   and Jaclyn McAndrew on behalf of the City.

14          MS. ROSEN:  Good morning, your Honor, Eileen Rosen

15   on behalf of defendant police officers.

16          THE COURT:  Good morning.  Now, you are probably

17   wondering why would I call this thing so early, but I would

18   hope that the reason would be obvious, and that is that I

19   received a copy of a proposed motion for reassignment on

20   relatedness grounds for my colleague and good friend Andrea

21   Wood.  And I took a look at it and it clearly does not

22   qualify under our Rule 40.4.

23          The idea of saying that it is susceptible of

24   disposition in a single proceeding sounds as though what that

25   means is that if you really can consolidate it, you have got

1    two different clients who have chosen different lawyers.  And

2    what am I going to do, am I going to oust one of the lawyers

3    and turn the client over to the other lawyer?  That is not

4    the way representation goes.  And these people really have

5    different claims, although the origins are identical.

6           Not only are the origins identical, but when I

7    started to read it, it was perfectly obvious from the

8    literary style that there had to have been some cooperation

9    before these things got filed because nobody drafts one with

10   the same language and files it three days later than the

11   other one if that didn't take place.

12          So the reason that I had set this one was to

13   inquire of the counsel in my case whether my assumption in

14   that regard is correct and that therefore what we are dealing

15   with is a situation in which counsel for the two plaintiffs

16   were at least cooperating to that extent when they filed the

17   separate actions, although one side is -- one party is

18   represented by the Loevy law firm and the other one is

19   represented by Steve Greenberg.

20          So tell me.

21          MS. DONNELL:  Well, your Honor, it is -- first we

22   would say to the extent we are talking about the draft

23   complaints, they are protected by the work product privilege.

24   And it is true we do share a common legal interest and in

25   that way we are coordinating.  You know, I think we are --

1   you observed that.

2           THE COURT:  My question is a little different one.

3   You know, we have all heard the old homily about if you put

4   enough monkeys to work and enough typewriters, that one of

5   them would produce a Shakespearean play.  But we are not

6   dealing with monkeys here, we are not dealing with

7   typewriters.

8           What we are dealing with is the use of the English

9   language.  And there is no way that this was accidental.

10  Okay?  I don't have to be a nuclear physicist, although that

11  was once my ambition.  Well, I majored in math and physics.

12  What are you going to do?

13          So I really -- I am not asking you to breach

14  confidentiality in terms of lawyer-client communications or

15  anything else.  I am merely asking am I right in my

16  assumption that there was indeed cooperation in terms of the

17  drafting of the thing because we do have claims, claims for

18  relief arising out of identical -- well, not identical

19  circumstances because, you know, we have one ends up with a

20  75- year term, the other one ends up with a 25-year term.

21          Clearly one -- the way I read the allegations

22  -- and I am not necessarily crediting them -- but the way I

23  read the allegations one had a heavier involvement --

24  asserted involvement or lack of it than the other one.  Okay?

25          MS. DONNELL:  Yeah, they certainly are arising out

1   of the same investigation, but you are absolutely right,

2   Mr. Hood, you know, served over two decades, Mr. Washington

3   had a decade.

4                THE COURT:  You are not answering my question.

5                MS. DONNELL:  Yes.

6                THE COURT:  You understand I would move to strike

7   as nonresponsive.

8                MS. DONNELL:  Yes.

9                THE COURT:  That is not my question.

10               MS. DONNELL:  No, you are accurate.  Without

11  peeling back the privilege, you are correct.  There is -- and

12  we are happy to coordinate with that case.

13               THE COURT:  Okay.  Now, that then leads me to the

14  other point, and that is that reassignment on grounds of

15  relatedness in that circumstance is really not the answer

16  because -- I know what Judge Dow did, for example, but you

17  see too many people on our Court, too many of my colleagues,

18  don't know the history and the purpose of 40.4, which I plead

19  guilty to having drafted.  Okay?  And the reason, when we

20  talk about capable of disposition in a single proceeding,

21  really means that.

22               And that is really not true here in a situation

23  that you have got these two plaintiffs with separate

24  representation, each one is interested in advantaging the --

25  that client's representation, but you also clearly don't want

1    to have the need to be plowing the same field twice, taking

2    the same party's deposition twice, engaging in other

3    discovery twice.

4          And so what we commonly do in those situations is

5    to have one of the two judges -- and ordinarily -- and we all

6    volunteer on that.  Ordinarily the judge with the

7    lower-numbered case takes that responsibility, and that would

8    be Andrea in this situation.

9          But the -- it has a -- it is pursuant to a --

10   correlated orders in the two cases that essentially provide

11   that discovery in one case will be discovery in the other;

12   that motions, for example, would be brought before the judge

13   who undertakes that responsibility so you don't have to go

14   running into two different courtrooms with the same motion,

15   unless you have actually got a motion that is limited to the

16   particular case, in which case the judge who has the actual

17   assignment of the case would be responsible for that.  But

18   that we always leave to the lawyers, you know.

19         So what I am really dealing with is that -- the

20   City I know has a motion to be up for presentment before

21   Judge Wood, and it seems to me that that is not entirely

22   well-considered under the circumstances when you can

23   accomplish the purpose, which is what everybody ought to be

24   interested in -- you want to have economies of scale.  You

25   want -- you don't want to be engaging in repetitive activity

1    because it is wasteful of time, it is wasteful of clients'

2    money.

3                Even the lawyers for the public bodies who, you

4    know, don't work for a living -- no, seriously, who after all

5    -- whose compensation does not depend upon the numbers of

6    hours that they spend on the particular case have exactly the

7    same problem because they are just as busy and they just as

8    much want to avoid that, and their clients want them to avoid

9    that.

10               So that is really the reason for my calling this

11   one so early and out of time and in an unusual way.

12               MS. DONNELL:  Your Honor --

13               THE COURT:  I have done a lot of talking here.  I

14   haven't given you people a chance to talk.

15               MS. DONNELL:  Your Honor, I -- what -- I think from

16   the plaintiffs' perspective we do have a track record of

17   similar cases like the Daniel Taylor case where a similar

18   case was filed with other attorneys arising from the same

19   investigation, and what the parties did and the lawyers did

20   is we coordinated discovery and took one set of depositions

21   where all the parties were present.

22               THE COURT:  Right.

23               MS. DONNELL:  We had all the efficiencies we

24   needed.  But at the same time, like you have acknowledged,

25   we kept the cases formally separate, but we got all the

1    efficiencies by all the parties agreeing --

2            THE COURT:  That is the --

3            MS. DONNELL:  -- that everyone comes to one dep.

4            THE COURT:  That --

5            MS. DONNELL:  And we get, you know, one set of

6    documents.  And we attain all the efficiencies that we need

7    for all the lawyers in court.

8            THE COURT:  Well, I understand.  Let me just hear,

9    though, from the movant because --

10           MR. GIVEN:  Judge, I represent the City.

11           THE COURT:  Yeah.

12           MR. GIVEN:  It was my motion in front of Judge

13   Wood.

14           THE COURT:  I know that.

15           MR. GIVEN:  I understand what your Honor is saying.

16   I respectfully disagree that it is not -- we believe that it

17   is -- meets the requirements of the local rule.

18           THE COURT:  Tell me about it.

19           MR. GIVEN:  Judge Dow, for instance, as you --

20           THE COURT:  Tell me about it.  You know, I --

21           MR. GIVEN:  Well, hold on.

22           THE COURT:  Were you there -- were you there at the

23   gestation, let alone the birth?  No.

24           MR. GIVEN:  I was not.  But the body of law is an

25   evolving, growing thing.

1          THE COURT:  The body of law --

2          MR. GIVEN:  I am sure whatever happened at the

3     birth of it has moved on and there is case law.

4          THE COURT:  Can I tell you something about the body

5     of law.  The body of law before district judges is not a body

6     of law.  We don't make precedent, none of us.  And the fact

7     that you can point to a -- you may be able to point to a

8     number of decisions at the district court level -- let me

9     give you -- look, often what we get is a judge who will grant

10    such a motion on the premise that, for example, if a summary

11    judgment is filed and it is successful on the part of a

12    defendant, that kills both cases.  Okay?

13          The problem is that is a one-way street.  If the

14    summary judgment is denied, what happens is that the two

15    cases -- that the judge who got the case by the reassignment

16    ends up with two cases, the other judge ends up with -- with

17    none.  But our computer you see is not geared to that kind of

18    system.

19          So what happens is that a judge gets -- and it is

20    not your business I understand, but that judge gets

21    essentially credit as though there are two cases, when in

22    fact there really aren't.  It is something less than two

23    cases.  The sending judge does not essentially get credit

24    because sending it means that another one gets to plug into

25    the computer so that when the cases are distributed, the

1    judge gets it.

2              So what you have is a system that I have referred

3    to frequently as a one-way street.  Indeed I will tell you

4    that because it -- that I am contemplating building into

5    recommending to our Rules Committee, because I am delighted

6    to say I am no longer for many years its chairman -- I am

7    going to recommend that we adopt a further modification of

8    40.4 that essentially institutionalizes the prospect that I

9    have just talked about, that is, the one in which you

10   accomplish all of the same purposes, but you don't do it by

11   engaging in what goofs up the assignment system, the computer

12   calculations, and that is leave the case on the calendar of

13   the -- of the judges who have those cases by random

14   assignment.

15             Random assignment is the strength -- the greatest

16   strength of our system.  It really is.  The idea of avoiding

17   judge shopping -- and I don't say that necessarily in a

18   pejorative sense.  Lawyers are entitled to try that and, you

19   know, find that they might have a more sympathetic ear.  But

20   you are just -- you just do not, by your reference to a body

21   of law, understand that what place we occupy on this side of

22   the bench in the judicial firmament, that is, not one of us

23   -- I don't make precedent certainly for others and others

24   don't make precedent for me.

25             And so I would like you to be somewhat more

1    flexible in terms of the point that I am making.  If you

2    accomplish all the same purposes without the assignment --

3    the actual assignment of the case which moves it from one

4    judge's calendar to another, you have gotten your purpose

5    satisfied, that is, you avoid the duplicative activity.  You

6    engage in the case in exactly the same way as if there were

7    an actual transfer of the case in terms of the practical

8    aspects of going forward with preparation.  So you are not

9    harmed in any way by that, but you don't have the physical

10   transfer from one calendar to another.

11            MS. ROSEN:  Your Honor, under your proposed

12   suggestion it would be easy enough for the parties to

13   coordinate the discovery in that fashion, but the other --

14   the other point that the City made --

15            THE COURT:  When its comes to trial --

16            MS. ROSEN:  No, no, and we can set the trial aside

17   for a moment.

18            THE COURT:  Okay.

19            MS. ROSEN:  But the -- with respect to the Judge

20   Dow case --

21            THE COURT:  Yeah.

22            MS. ROSEN:  -- he allowed for the provision that if

23   we got to that point --

24            THE COURT:  Right.

25            MS. ROSEN:  -- that it could go back to the

1   originally-assigned judges.

2          THE COURT:  I read about that, yeah.

3          MS. ROSEN:  But what I am talking about in the

4   context, using that case as an example, there have been

5   numerous motions filed and it has all been resolved we think

6   in an efficient way by either Judge Dow or Magistrate Judge

7   Finnegan because the issues were all the same for --

8          THE COURT:  Well, let me give you a little history

9   on that.  When I got on this Court, we had something like 300

10  asbestos disease cases out of Johns-Manville plant in

11  Waukegan.  My good friend and colleague John Grady had the

12  lowest-numbered case.  And the computer delivered that one to

13  me.  And I dealt with I think something in -- and the cases

14  were all spread around the Court on different calendars.

15  Every motion was brought before -- I had to write I think

16  something in the area of 29 or 30 opinions.  They did not

17  bind my colleagues for the reasons that I have just

18  expressed, but basically that part of the function is there

19  as well.

20          That is the point that I made, and that is that it

21  would only be in the rare situation -- and I can't frankly

22  contemplate it in this one -- that an issue would arise in

23  connection with a motion that is really limited to this case

24  of mine, that it would be before me, assuming that Judge Wood

25  is the one with the coordinating process.  So once again all

1  of those advantages are exactly the same.  Okay?

2  And it would -- and there is no reason to shift

3  that, that is, if she is willing to do that, it is fine with

4  me.  I would be equally willing to do it if the situation

5  were reversed.  It is no big deal in that regard and it is a

6  practical resolution.

7  What about that?

8  MR. GIVEN:  Judge, you put me in quite a bind here,

9  but the truth is I understand what you are saying.  I

10  recognize that the possibility of coordinated discovery,

11  etc., as you have described is certainly a possibility for

12  what --

13  THE COURT:  How does it --

14  MR. GIVEN:  Come on.  May I just finish?

15  THE COURT:  May I just ask you a question?  How is

16  it different?  How is it --

17  MR. GIVEN:  In part for the reasons that -- that

18  Miss Rosen said.  And the truth is, your Honor, you are --

19  what you are asking me, if I understand right, is you are

20  asking me to withdraw my motion in front of Judge Wood.  Is

21  that correct?

22  THE COURT:  No, no, I will let her resolve it.

23  MR. GIVEN:  Okay.

24  THE COURT:  But I can tell you one of the

25  exceptions to ex parte communication is judge-to-judge

1    communications, and so I am free to talk to her about that.

2    And whatever she decides to do, she will do.  I am not --

3              MR. GIVEN:  Sure.

4              THE COURT:  -- dictating to her.

5              MR. GIVEN:  Judge, I am trying to be truly and

6    totally respectful to your Honor.

7              THE COURT:  You are not doing a very good job.

8              MR. GIVEN:  Well, frankly, I think my motion -- you

9    started by telling me that my motion really wasn't brought it

10   in good faith --

11             THE COURT:  No, I didn't say that.

12             MR. GIVEN:  -- because it doesn't meet the

13   criteria.  And I do believe it does.

14             THE COURT:  I didn't say -- now, wait just a

15   minute.  I never said that it wasn't done in good faith.  You

16   know, the -- what is it about a judge saying to a lawyer "I

17   don't agree with you" that correlates to saying that the

18   lawyer had advanced something not in good faith?

19             MR. GIVEN:  Well --

20             THE COURT:  I don't do that.  I don't intend that.

21             MR. GIVEN:  Then I apologize, your Honor.  What I

22   heard was your first words were that my motion clearly didn't

23   meet the standards of 40 --

24             THE COURT:  Yeah, and I would repeat that.

25             MR. GIVEN:  And I -- and I respectfully disagree.

1    THE COURT:  I am not faulting you because, frankly,

2    if I had to do the job of drafting it over again, the

3    language would be modified somewhat.

4    Another piece of modest history, and that is that

5    Part 1 of the -- of the 40.4(b)(1) has to do with a -- both

6    cases being pending.  And, you know, when people don't know

7    the history of something, you have no idea what that can lead

8    to.  Some years ago two cases came up, one from my good

9    friend and neighbor Judge Norgle and another one from me.  He

10   had decided an issue first.  Came along to me in a somewhat

11   modified context and I didn't agree with that.  And they --

12   the cases were taken up on appeal, not together but

13   sequentially, and they were considered by the Court

14   sequentially.

15   And Judge Posner because the -- you know, Courts of

16   Appeals have a different situation in which the -- the random

17   assignment system is not what is operative.  So he looked at

18   the rule and he said, "well, it satisfies it, both cases are

19   pending; one case is pending up here and the other one is

20   pending down there."  Well, if you don't know something about

21   the antecedents of the thing, it is quite understandable that

22   somebody would look at that language and say that.

23   And so it is not a matter of an absence of good

24   faith.  I would never suggest that.  What I am saying is that

25   your -- was it Santayana who said that those who don't study

1    history are doomed to repeat it?  You know, that is the sort

2    of thing --

3              MR. GIVEN:  Well, your Honor, and I appreciate that

4    I don't have the institutional knowledge that you do, but I

5    did read a number of cases --

6              THE COURT:  What did you read?

7              MR. GIVEN:  -- about 40.4.  I feel like I educated

8    myself with the history of how the rule has been interpreted

9    over the years.

10             THE COURT:  Yeah.

11             MR. GIVEN:  And I believe quite honestly -- and I

12   know it disagrees -- this is a different conclusion than your

13   Honor has expressed.  And I respect yours.  I hope you

14   respect mine.  And I will undoubtedly be in front of your

15   Honor on this or any other case in -- you know, for many

16   years to come I hope.  But I disagree.

17             THE COURT:  Well, no.

18             MR. GIVEN:  I disagree.

19             THE COURT:  Wait, wait, not with the actuarial

20   tables, no.

21             MR. GIVEN:  You are right, my actuarial tables tell

22   me I probably won't be here as long as I just said.

23             But the truth is, your Honor, I do believe that the

24   motion was brought, putting aside good faith, with a --

25             THE COURT:  A reasonable --

1    MR. GIVEN:  -- a reasonable --

2    THE COURT:  -- a reasonable advance of a position.

3    MR. GIVEN:  Correct.

4    THE COURT:  And of course, as we know, Rule 11 says

5    that even to modify existing is perfectly good faith in the

6    -- both in the subjective and objective way that exists under

7    that.

8    MR. GIVEN:  Correct.

9    THE COURT:  So I am not criticizing it.

10   MR. GIVEN:  And, your Honor, I also --

11   THE COURT:  But I -- you know, what you really have

12   not answered anywhere is the point that I have made, and that

13   is if you could identify for me a different aspect of the

14   thing that would be meaningful if the cases were, as you put

15   it, consolidated, which, by the way, is a bad label.  Just

16   take a look at the rule.

17   MR. GIVEN:  It is reassigned, not consolidated, I

18   understand.

19   THE COURT:  But in any event if you can identify

20   for me -- and I would listen to that -- a way in which it is

21   really a different outcome in any respect from the one I am

22   talking about, I might be more receptive.  But you see when

23   you simply keep falling back, well, there is an established

24   body of law you have -- you asserted it in good faith, which

25   I accept, but that doesn't make it the right way to do it.

1       MR. GIVEN:  Well, okay, let me then try to provide

2   a couple of things off the top of my head because I obviously

3   wasn't --

4       THE COURT:  Go ahead.

5       MR. GIVEN:  Well, I am prepared -- so never mind.

6       First of all there would be the substantive motions

7   that Ms. Rosen just referred to.

8       THE COURT:  Right.

9       MR. GIVEN:  And I am not sure that -- I have no

10  experience in the system that you just described a few

11  minutes ago about how competing judges take the same -- on a

12  substantive basis and both on discovery as well as motions to

13  dismiss, motions to bifurcate and other types of motions like

14  that that -- how that works between two judges.  I have no

15  familiarity with it.  That is No. 1.

16      No. 2, I am not sure that I accept your premise.  I

17  understand the basis for why you say that, but I am not sure

18  that I necessarily agree that in no case could the two cases

19  in a situation like this not actually be tried in a single

20  proceeding.  Other courts have held that they can.  You

21  obviously disagree.  And Judge Wood might disagree.  But I do

22  believe it happens, for instance, in criminal cases all the

23  time where there are co-defendants.

24      THE COURT:  Irrelevancy.  Really irrelevancy.  That

25  is chosen by the prosecutors, and we respect their choices.

1          MR. GIVEN:  Judge, my point simply is that I am
2     not --
3          THE COURT:  When we are dealing with -- let me tell
4     you something.  There was an American craft -- airline
5     disaster, crash disaster at O'Hare.  Case involved multiple
6     decedents, as you might guess.  Hugh Will, my great
7     predecessor whose privilege -- whose position I was
8     privileged to take when he took senior status, dealt with the
9     question of the motions.  But when it came to trials, because
10    he recognized that everybody had his or her own claim, he
11    determined -- and I think appropriately -- that those people
12    were entitled to separate trials and that -- and that his
13    resolution of who was liable, for example, the airplane
14    manufacturer, Boeing; the engine manufacturer, having
15    determined that in connection with the motions that applied
16    across-the-board -- he recognized -- and I think correctly --
17    that we don't really -- when people have chosen their own
18    lawyers, I think that it would be entirely improper for a
19    judge to enter an order that essentially compels a client to
20    act with a different lawyer from the one the client has
21    chosen.
22          I think it would be unfair to Steve Greenberg if
23    somehow the Loevy firm ended up with both those cases on
24    their and it would be unfair to the client who has made a
25    choice.

1          You know, you don't have to choose -- you don't

2     have to have clients chosen for you because, you know, you

3     are representing a single client all the time.  But you know

4     lawyers have an entitlement to deal with matters that are --

5     that in which clients repose confidence in them.  They may

6     feel that they will get a better outcome with the client --

7     the lawyer that they have chosen.  And the idea that somehow

8     a motion of the type that you are talking about can end up

9     with a trial in which you don't have that really violates the

10    notion of lawyer-client relationships.

11          MR. GIVEN:  Sure.  But, Judge, I think there is

12    maybe a fundamental misunderstanding that I am having or that

13    we are having because nothing about my motion contends or

14    would result in Mr. Washington not being able to have

15    Mr. Greenberg and Mr. Hood not having -- being able to have

16    the Loevy firm.

17          THE COURT:  But you keep coming back you see to the

18    same thing in which you haven't identified, frankly, a single

19    area of difference that would apply in the two different

20    alternatives that we have talked about.  Not one.  Not one

21    that would be prejudicial to anybody.  Not one that would

22    create greater difficulty on the part of a defendant for

23    whose -- and I certainly respect that their right to have

24    minimized involvement and elimination of duplicative activity

25    is equally important.

1           But you see you get all of that.  And you somehow
2   don't seem to --
3           MS. ROSEN:  If I could just ask one more question
4   about that because, quite frankly, Judge --
5           THE COURT:  From another generation, it sounds like
6   a broken record, right?
7           Go ahead.
8           MS. ROSEN:  Your Honor, from the defendants'
9   perspective, obviously, you know, we have had personal
10  involvement with the Judge Dow case.  And it was in a very
11  large case that involved an enormous amount of discovery --
12          THE COURT:  Yeah.
13          MS. ROSEN:  -- lots of litigation, and has worked
14  very, very well.  And I think even, you know, the
15  representatives from Mr. Loevy's office, even though these
16  aren't the attorneys that are handling it, will agree that it
17  has been completely efficient and a great, from my
18  perspective, way to deal with this type of litigation.
19          But I guess I am not understanding from what you
20  are suggesting if it is not -- if it is not -- if the
21  mechanism by which the cases are combined, let's say --
22          THE COURT:  Right.
23          MS. ROSEN:  -- is not through the motion that has
24  been filed in front of Judge Wood, then how is it -- so if we
25  extrapolate it out based on the Court's suggestion --

1            THE COURT:  It is --

2            MS. ROSEN:  -- if we -- if Judge Wood is the judge

3    hearing the case and that magistrate, though I can't remember

4    who it is at the moment, is the magistrate handling the case,

5    if all of the motions and everything are filed there --

6            THE COURT:  Yeah.

7            MS. ROSEN:  -- does Mr. Hood then have an

8    opportunity if he doesn't like the ruling there --

9            THE COURT:  No.

10            MS. ROSEN:  -- to come here?

11            THE COURT:  No, I am not suggesting that.

12            MS. ROSEN:  Okay.

13            THE COURT:  I am not suggesting that.

14            MS. ROSEN:  Okay.

15            THE COURT:  You know, again I am not -- I am not

16    looking to require counsel to do anything more.  And all that

17    it does, it is -- you want to know how it works mechanically,

18    is by reciprocal orders of the judges in which in my case I

19    would simply agree that -- to all the things that we have

20    talked about.

21            MS. DONNELL:  Well, your Honor, I would like to

22    just state our position for the record because, again, I am

23    not counsel in the Dow case, but the alternative I was

24    proposing was in the Daniel Taylor case where they were not

25    consolidated -- I mean we -- consolidated even in those

1    regards, but in fact the lawyers worked as adults and

2    coordinated all the discovery, but the cases remained in

3    front of their judge for purposes of the motions.

4                And particularly in this case, like summary

5    judgment, we have very different legal claims in Mr.

6    Washington.  There will be different qualified immunity

7    issues.

8                THE COURT:  Right.

9                MS. DONNELL:  And for summary judgment purposes I

10   can imagine maybe there is some ways that discovery we can

11   think of consolidating, but even there there are ways in

12   which there are going to be differences, which doesn't mean

13   we cannot get the efficiency that we are talking about in

14   discovery, and in some ways will make it more efficient

15   because somewhere down the road they are going -- the paths

16   are going to diverge for sure.  They are different claims.

17   There is different legal claims.  And, as you said, I think

18   it is very clear they are both entitled to their own trial.

19               THE COURT:  If that were to occur, something other

20   than the arrangement that I have talked about, that is

21   something that would have to be raised by motion and looked

22   at particularly because, again, I am not suggesting anything

23   that would really disadvantage the parties in connection with

24   the kind of arrangement that I have talked about.  Quite the

25   contrary.

1          MS. ROSEN:  What I am hearing, though, from

2     plaintiffs' counsel is that what they are suggesting is a

3     coordination of discovery, so, for example, the depositions;

4     but if there is discovery disputes, that they would go to the

5     separate judges and be dealt with separately.

6          THE COURT:  No, I am not --

7          MS. ROSEN:  That is what I am hearing.

8          THE COURT:  I don't care whether they are

9     suggesting that or not.

10          MR. ROSEN:  Okay.

11          THE COURT:  They are not going to get that, no.

12          MR. GIVEN:  Judge --

13          MS. DONNELL:  Then how about dispositive motions?

14     I mean clearly are -- you know, what we have coming is

15     different.  There is different legal claims.  I mean

16     Mr. Washington pleaded guilty.  There is a confession.

17          THE COURT:  If there is a different legal issue

18     that is unique to that case, that is obviously a different

19     proposition.  I am certainly not delegating to another judge

20     what is my responsibility in connection with my case.  I am

21     trying to maximize the level of cooperation.  I am trying to

22     maximize the avoidance of duplicative activity.

23          The only thing that I am not suggesting is that

24     what we do is to do violence to our random assignment system.

25          MS. ROSEN:  And --

1          MR. GIVEN:  Judge, I -- I hope you are not

2    suggesting that I am trying to do violence to the random

3    system.

4          THE COURT:  Oh, come on.  You know --

5          MR. GIVEN:  I filed with the lower --

6          THE COURT:  Relax, counsel.

7          MR. GIVEN:  I would have filed the same motion if

8    you were the lower filed.

9          THE COURT:  If you really want to have -- if you

10   really want to have a nice time during whatever limited time

11   remains for me on the bench, subside.  Okay?

12         MR. GIVEN:  Okay.

13         THE COURT:  Take the chip off your shoulder, okay?

14         MR. GIVEN:  Okay.

15         MS. ROSEN:  So --

16         MR. GIVEN:  Now, may I also say one other thing,

17   your Honor?

18         THE COURT:  Any time.

19         MR. GIVEN:  Thank you.  The purpose of the motion

20   for reassignment based on relatedness was as stated in the

21   motion and the -- if at the end of the day what resulted from

22   Judge Wood's order -- or consideration of that motion would

23   be an order comparable to what Judge Dow came up with, as

24   Miss Rosen has explained, that end result which was

25   accomplished through the same kind of motion as I filed in

1  Washington, would be totally acceptable to the City.  And if

2  there is another way to accomplish that same bottom line,

3  then I am willing to accomplish that same bottom line in the

4  other alternative way.

5           As Ms. Rosen points out, what the plaintiffs are

6  talking about as I am hearing it, is something different than

7  what happened in the Englewood Four cases and what Judge Dow

8  ordered, which has worked extremely efficiently.  So --

9           MS. DONNELL:  But we have another model that has

10  worked efficiently in the Daniel Taylor case.  So it -- we

11  have a model that has also been efficient.

12           THE COURT:  What is your suggestion about a motion

13  for summary judgment when discovery is over?

14           MS. ROSEN:  Well, I think -- your Honor --

15           THE COURT:  Wait a minute.  I want to hear an

16  answer to that question.

17           MS. ROSEN:  Sure.  I -- the answer to the question

18  I think, Judge, is that it would -- at the time that the

19  summary judgment is filed, to the extent that there are

20  claims that are the same, I think they can be dealt with by a

21  singular judge.  There is no reason why two judges -- if the

22  claims are precisely the same --

23           THE COURT:  I am talking about a summary judgment

24  in one case that is based upon the circumstances of that case

25  which are not -- these people were not Tweedle Dum and

1     Tweedle Dee.  They were in many respects but not precisely,

2     and so --

3                  MR. GIVEN:  Judge --

4                  THE COURT:  You know, I am not going to deal with

5     advanced rulings on this thing.  But if I hear you saying

6     that what should be done is an -- is the kind of reassignment

7     on relatedness grounds that essentially delivers the case for

8     all dispositive purposes to another judge, then I -- you

9     know, we have a system under which when a matter comes before

10    two judges who may differ in views, the Executive Committee

11    resolves it.

12                 Now, I don't anticipate that I am going to be at

13    war with Judge Wood, a very good friend and somebody whom I

14    respect a great deal.  But I have got to tell you you are

15    asking to bite off a great deal when you talk about what you

16    are suggesting.  The -- and I am -- I will tell you right now

17    I would oppose that totally, if that were the suggestion that

18    were being made with this reassignment on grounds of

19    relatedness.

20                 So be my guest.  I found out what I wanted to know

21    originally which was, as I suspected, that there had been the

22    kind of conferring and cooperation, although different people

23    chose different lawyers.

24                 Okay.  Thank you.

25                 MS. ROSEN:  Thank you, your Honor.

```
 1              MR. GIVEN:  Judge --
 2              MS. DONNELL:  Just one -- we had submitted a
 3   preservation order once the parties had conferred.
 4              THE COURT:  That is granted of course.
 5              MS. DONNELL:  And we --
 6              THE COURT:  I had granted that.
 7              MR. GIVEN:  Right.
 8              MS. DONNELL:  Yes.  And we submitted a proposed
 9   draft order to the Court that defined for the Chicago Police
10   Department specifically the files, the date range that we --
11   you granted it in general.  We had -- we were going to come
12   back to you.
13              THE COURT:  Be my guest.
14              MS. ROSEN:  No, you have the order.
15              THE COURT:  Oh.
16              MS. DONNELL:  You have that.
17              MS. ROSEN:  It just hasn't been entered on the
18   docket.
19              MR. GIVEN:  The order was submitted, your Honor.
20   You just haven't -- hasn't been entered on docket.
21              THE COURT:  I thought it had.
22              MS. DONNELL:  I thought it did too.
23              MR. GIVEN:  I looked at the docket this morning.
24              THE COURT:  Well, wait just a minute.  Carol?
25              THE CLERK:  Did you submit a hard copy to the Judge
```

1   for signature?

2              MS. DONNELL:  I think so, but I will confirm.  I

3   thought we did.

4              THE COURT:  I think that I --

5              MS. DONNELL:  Maybe it is my -- I will check and

6   see.  Maybe that was our issue.

7              THE COURT:  I think the stuff in the file was

8   signed, but --

9              MS. DONNELL:  Okay.

10             THE COURT:  Wait.  I didn't think that was -- as a

11  matter of fact -- wait a minute.  Where is my list of pending

12  motions?  It is -- I am quite sure it is not on my printout.

13             MS. ROSEN:  Oh, that's right.  You granted it.

14             MR. GIVEN:  Judge, you granted the order.

15             MS. ROSEN:  You did grant it.

16             MS. DONNELL:  You granted it.

17             MR. GIVEN:  I am sorry, granted the motion.

18             MS. ROSEN:  Granted the motion.  But there was a

19  proposed order that was submitted that detailed specifically

20  the files that were to be preserved.

21             THE COURT:  Ah.

22             MS. ROSEN:  And plaintiffs' counsel submitted it.

23  And that order needs to be entered so we can give it to

24  the --

25             MS. DONNELL:  I will -- I will make -- if it -- I

1    will make sure a hard copy is sent over.

2              THE COURT:  Get it to her and I will sign it.

3              MS. DONNELL:  Absolutely today, as soon as I get

4    back.  Thank you.

5              MR. GIVEN:  Thank you.

6              MS. ROSEN:  Thank you, your Honor.

7         (Which were all the proceedings heard.)

8                          CERTIFICATE

9         I certify that the foregoing is a correct transcript

10   from the record of proceedings in the above-entitled matter.

11

12   s/Rosemary Scarpelli/          Date:  March 30, 2016

13

14

15

16

17

18

19

20

21

22

23

24

25