IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TYRONE HOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 CV 1970 |
| | ) | |
| v. | ) | Honorable Andrea R. Wood |
| | ) | Magistrate Judge Maria Valdez |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF TYRONE HOOD'S MOTION TO QUASH DEFENDANT
CITY OF CHICAGO'S SUBPOENA FOR THIRD-PARTY WITNESS
EVA NAGAO'S DEPOSITION AND RIDER FOR PRODUCTION OF DOCUMENTS**

TABLE OF CONTENTS

Introduction ........................................................................................................................................1

Background Facts .............................................................................................................................3

Legal Standard ..................................................................................................................................5

Argument ..........................................................................................................................................5

    1. The Defendants' Subpoena is Untimely ................................................................................5
    2. The Subpoena Should be Quashed Because it is Unduly Burdensome ................................5
          a. The Evidence that the Subpoena Requests is Not Relevant ....................................6
          b. Even if it Were Relevant, the Subpoena Seeks Cumulative Information and is Overbroad ................................................................................................................11
          c. Work Product Covers Much of What Defendants Would Seek to Question Ms. Nagao About .............................................................................................................12
    3. The Deposition Should be Quashed Because it is Harassing ..............................................14

Conclusion ......................................................................................................................................15

# TABLE OF AUTHORITIES

*Ameritox Ltd. v. Millennium Labs, Inc.*, No. 12 CV 7493, 2012 WL 6568226
(N.D. Ill. Dec. 14, 2012) ..................................................................................................12

*Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55 (1st Cir. 2003)……………………………..15

*Domingo v. Donahoe*, C-11-05333CRB (EDL), 2013 WL 4040091 (N.D. Cal. Aug. 7, 2013)………...13

*Fields v. City of Chicago*, No. 10 C 1168, 2012 WL 4892392 (N.D. Ill. Oct. 15, 2012)……………......13

*Fine v. Facet Aerospace Products Co.*, 133 F.R.D. 439 (S.D.N.Y. 1990)……………………………….12

*Evans v. City of Chicago*, 231 F.R.D. 302 (N.D. Ill. 2005) ...........................................................7

*Gordon v. Phar-Mor, Inc.*, No. 99-1695, 2000 WL 127501 (8th Cir. 2000) ................................11

*Last Atlantis Capital, LLC v. AGS Specialist Partners,* No. 04 C 0397, 05 C 5600, 05 C 5671, 2013 WL 182792 ..................................................................................................................5

*Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004)……………………………………….10

*Parker v. Four Seasons Hotels,* Ltd., 291 F.R.D. 181 (N.D. Ill. 2013)................................................5

*Residential v. Kendall Risk Mgt., Inc.*, 246 F.R.D. 557 (N.D. Ill. 2007)

*Robinson v. Morgan Stanley,* No. 6 C 5158, 2010 WL 1005736 (N.D. Ill. Mar. 17, 2010).........................5

*In re Gen. Instrument Corp. Sec. Litig.*, No. 96-1129WL 1741937
(N.D. Ill. Nov. 22, 2000)..................................................................................................8

*In re Heartland Inst.*, No. 11 C 2240, 2011 WL 1839482 (N.D. Ill. May 13, 2001) ................................10

*Swick v. Listaud,* 169 Ill.2d 504 (1996) ........................................................................................6, 9

*Walden v. City of Chicago*, 755 F. Supp. 2d 942 (N.D. Ill. 2010) ...................................................7

Plaintiff Tyrone Hood, by and through his counsel, Loevy & Loevy, brings this motion pursuant to Federal Rule of Civil Procedure 45 seeking an order to quash the third-party subpoena Defendants served on a member of Plaintiff's criminal legal team, Ms. Eva Nagao. In support of his motion to quash, Plaintiff states as follows:

**Introduction**

Defendants' strategy in this litigation is to distract and deflect. Rather than focus on discovery relating to the claims and defenses in this litigation—as Federal Rule of Civil Procedure ("Rule") 26 demands—the Defendants are trying to depose Plaintiff Tyrone Hood's legal team in an attempt to create a media conspiracy that does not exist.[1] The latest example of this strategy is the subpoena that was issued on August 7 to Eva Nagao—just twelve days before the close of a three-year fact discovery. Ms. Nagao is a former paralegal and Director of The Exoneration Project, the organization that represented Mr. Hood in his post-conviction proceedings and continues to represent Mr. Hood in his ongoing certificate of innocence proceedings. Notably, the Defendants have already deposed Mortimer Smith,[2] the investigator who has worked on both the post-conviction and current case, and Karl Leonard, one of Plaintiff's post-conviction and certificate of

---

[1] Defendants set forth their far-fetched media conspiracy story in their response to the motion to quash the subpoena they served on the *New Yorker* journalist, Nicholas Schmidle, who Defendants mischaracterize as "not on the sidelines reporting a story from a distance" but "an advocate in the thick of the effort to exonerate Hood through a public relations campaign." Ex. A (Defendants' Response to Schmidle's Motion to Quash) at 18. Plaintiff has attached the Defendants' response brief here as Exhibit A. In response to Plaintiff's request that Defendants provide the topics for which they believe Ms. Nagao has relevant testimony, Defendants referred Plaintiff and his counsel to this brief. Ex. B (Email Correspondence dated August 7, 2019). Defendants apparently would like Ms. Nagao's deposition in order to further their distracting, irrelevant and false narrative that they are attempting to construct about the media conspiracy to free Mr. Hood.

[2] Plaintiff attempted to seek a protective order to bar Mr. Smith's deposition, but the Court denied it without prejudice. Dckt. 261. Plaintiff has not renewed his motion at this time because Defendants have not stated yet whether they would seek to obtain any additional testimony to the question for which Plaintiff's counsel asserted his work product or attorney-client privilege. *See* Exhibit C (Emails between Ms. Donnell and Mr. Moran). However, Plaintiff notes that in Court earlier today counsel for Defendant City indicated that they may seek to do so after they have reviewed the deposition transcripts. Plaintiff opposes any such motion.

1

innocence attorneys. At some point, enough is enough. Defendants' belated attempt to depose Plaintiff's counsel's former paralegal on irrelevant, cumulative, and at this point, harassing, testimony should be quashed.

The Defendants have offered no compelling reason for this deposition. Defendants have not provided a basis for another attempt to peel back the curtain that ordinarily protects a client's legal team beyond their own concocted far-fetched theory that Plaintiff's legal team hoodwinked a seasoned *New Yorker* reporter, Nick Schmidle, into parroting back a false narrative about Plaintiff's innocence that was purportedly the basis of Plaintiff's exoneration. Ex. A (Defendants' Response to Schmidle's Motion to Quash) at 3-10 and 18-27. The problems with this theory are numerous: First, absolutely no evidence exists to support it and there is no basis to question Mr. Schmidle's independence and reporting. In fact, included in that reporting was an interview with one of the Defendants—Kenneth Boudreau. Defendants certainly do not claim that Plaintiff's counsel orchestrated Defendant Boudreau's very colorful statements about his continued belief in Hood's guilt and Defendant Boudreau's damnation of Plaintiff's counsel to a special place in hell. Ex. D (Schmidle, "Crime Fiction," *New Yorker*, at 16 (quoting Boudreau as stating that "I know that Loevy & Loevy will go straight to Hell for what they do. They call it honor, but they are letting criminals walk free.")). To the contrary, Boudreau acknowledged making them to Mr. Schmidle; *i.e.*, he acknowledged that reporting was accurate. Ex. E (Boudreau Dep.) at 213.

Second, the Defendants have generated no evidence in the three years of discovery to link Mr. Schmidle's article—or any other media—to Mr. Hood's exoneration. To that end, although the Defendants have sought to depose all of the reporters and Plaintiff's legal team about their interactions with each other—in the nearly 50 depositions taken already and another 14 yet to be taken—the Defendants have yet to even seek the depositions of the Assistant State's Attorneys who actually made the decision to overturn Plaintiff's conviction and dismiss the charges—a glaring

2

omission given the actual claims (e.g., malicious prosecution) in this case. That Defendants have sought to turn this litigation into a referendum on media reporting that occurred in 2014 rather than on the claims at issue in this case does not make such efforts proper—or even relevant.

Pursuant to their obligations under Local Rule 37.2, Plaintiff's counsel reached out to defense counsel to inquire why they believed Ms. Nagao's testimony was relevant and discoverable at this late juncture. Plaintiff was concerned that this was yet another step in Defendants' campaign to pierce his work product privilege.[3] Defense counsel refused to provide Plaintiff with any clarification, and instead referred Plaintiff to their response to Mr. Schmidle's motion to quash his deposition, filed in the District of Columbia District Court, where the matter is proceeding. Ex. B (Email Correspondence dated August 7, 2019) ("I do not believe Defendants are required to provide you a list of "relevant" topics they intend to cover with Ms. Nagao, but I refer you to the Defendant Officers' memorandum in support filed in response to Mr. Schmidle's motion to quash for some of them.").[4] Defendants' subpoena for Ms. Nagao's deposition is untimely, seeks the deposition of another member of Plaintiff Hood's legal team, pertains to topics that stretch the boundaries of even the liberal standards of discovery under Rule 26, is cumulative and should be quashed.[5]

**Background Facts**

At the very start of discovery in this matter, Defendants served a Request for Production on Plaintiffs, seeking Plaintiffs' communications with the media. Ex. F (Plaintiff Hood's Objections and Responses to Defendant City's First Set or Requests for Production) at No. 54. Plaintiff Hood

---

[3] For example, during Mr. Smith's deposition, counsel asked him: "Do you have a plan to contact any witnesses in this case in the future?," to which Plaintiff's counsel objected and instructed the witness not to answer. Ex. G (Smith Dep.) at 138:12-17.

[4] Pursuant to Local Rule 37.2, Plaintiff met and conferred with counsel for Defendants but was unable to reach a resolution. Ex. B (Email Correspondence dated August 7, 2019); Ex. H (Email Correspondence dated August 12, 2019) (memorializing a meet and confer on August 9th at which defense counsel referred to the pleadings for Governor Quinn's subpoena and Mr. Smith and Mr. Leonard's depositions as additional reference for Ms. Nagao's deposition).

3

objected to the request on the basis of relevance because Plaintiff's counsel's communications with the media are not relevant to any claim or defense in this action. Nevertheless, Plaintiff produced those email communications back in July 2017. The emails included email communications between several members of the Exoneration Project and various journalists, including Ms. Nagao.

Defendants also subpoenaed the Exoneration Project for its file and the University of Chicago for any documents related to a panel discussion provided by clinicians to law students about University of Chicago's clinics in action. The Exoneration Project's panel brought in Mr. Hood, former Governor Quinn and two members of Mr. Hood's legal team, Mr. Leonard and Ms. Nagao. Defendants obtained an audio recording of the entire panel discussion back in the Fall 2018, which they then had transcribed.

Defendants have had these documents for years and yet now, in the last week of discovery, have subpoenaed Ms. Nagao's deposition and with it served a rider seeking even more documents. In other words, Defendants knew about Ms. Nagao, the *New Yorker* article published in 2014, as well as her communications with journalists since 2017. Nothing new has transpired in the last two weeks of discovery related to Ms. Nagao that would suddenly make her of interest to be deposed for any claims or defenses in this case. Nonetheless, during a conference call on August 5, 2019, the Defendants indicated—for the first time—that they might seek her deposition. A day later, on August 6, 2019, the Defendants served a subpoena for her deposition and an attached rider for documents to be produced at 10 a.m. on August 14, 2019, in Chicago. Notably, Ms. Nagao, who is no longer with the Exoneration Project, lives and works in California. The rider was expansive, seeking, for example, Ms. Nagao's communications with all media, Nick Schmidle, Renee Ferguson, Twitter account postings, communications with certain witnesses and communications with Governor Quinn or his staff. Ex. I (Subpoena for Ms. Nagao and attached Rider).

4

**Legal Standard**

Federal Rule of Civil Procedure 45(d)(3)(A) provides that a court is required to quash a subpoena where the subpoena "fails to allow a reasonable time to comply;" "requires a person to comply beyond the geographical limits specified in Rule 45(c);" "requires disclosure of privileged or other protected matter, if no exception or waiver applies;" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

Courts reviewing a motion to quash a third-party witness subpoena consider the additional burden on the third-party. "In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that 'non-party' status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) (quoting *Robinson v. Morgan Stanley,* No. 6 C 5158, 2010 WL 1005736 at *2–3 (N.D. Ill. Mar. 17, 2010)). Because third parties have not subjected themselves to the legal process, "courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs." *Id.* In addition, the courts also consider "the relevance of the discovery sought, the subpoenaing party's need for the documents, [and] the breadth of the request . . . ." when evaluating undue burden. *Id.* (quoting *Last Atlantis Capital, LLC v. AGS Specialist Partners,* No. 04 C 0397, 05 C 5600, 05 C 5671, 2013 WL 182792 at *1 (N.D. Ill. Jan. 17, 2013)).

**Argument**

1. **The Defendants' Subpoena is Untimely**

Plaintiff expressly incorporates Ms. Nagao's argument and attendant case law that the notice for Ms. Nagao's deposition was untimely.

2. **The Subpoena Should be Quashed Because it is Unduly Burdensome**

In addition to not providing sufficient time for compliance, the subpoena should also be quashed because it is unduly burdensome: it seeks information that is not relevant, that has largely

5

been produced or secured through other sources, and that is wildly overbroad, and it requires Ms. Nagao, a third-party witness to travel from California to Chicago for a deposition. Plaintiff not only expressly incorporates the arguments that Ms. Nagao made on this score, but also explains further below why the subpoena is unduly burdensome.

### a. The Evidence that the Subpoena Requests is Not Relevant

The starting point for this Court's analysis is whether the sought-after discovery is relevant to a claim or defense. Defendants cannot establish relevancy even under Rule 26's liberal standard.

Taking a step back, Mr. Hood has alleged that he was wrongfully convicted of a murder that he did not commit. In January 2015, Governor Quinn commuted his sentence; at that time, Mr. Hood was still a convicted murderer, but he was no longer incarcerated. Thereafter, the Cook County State's Attorney ("CCSAO") moved to vacate Mr. Hood's conviction and *nolle prosequied* the charges against him.

Among other claims, Plaintiff has alleged that he was maliciously prosecuted. To succeed on this claim, Plaintiff must establish that the charges were dismissed in a manner indicative of his innocence. The Illinois Supreme Court has explained that "a criminal prosecution has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the accused." *Swick v. Listaud*, 169 Ill.2d 504, 513 (1996). *Swick* identified those instances in which "[t]he abandonment of the proceedings is not indicative of the innocence of the accused": (1) "when the *nolle prosequi* is the result of an agreement or compromise with the accused"; (2) "misconduct on the part of the accused for the purpose of preventing trial"; (3) "mercy requested or accepted by the accused"; (4) "the institution of new criminal proceedings"; or (5) "the impossibility or impracticability of bringing the accused to trial." *Id.*

In order to determine whether the charges were dismissed in a manner indicative of innocence, the fact-finder must be presented with some evidence from which to infer the basis for the dismissal. Governor Quinn's reasoning behind his decision to commute Plaintiff's sentence is not that evidence; it is irrelevant to the malicious prosecution claim (or any other claim) because it did not vacate Mr. Hood's conviction. The fact of the commutation is relevant because it explains how Mr. Hood was able to leave prison before he served his entire sentence, and because it caps his damages by limiting the time he spent incarcerated.[6] But the reasoning behind that commutation is not germane to any claim or defense at issue.

The Defendants' attempt to argue to the contrary—for example, in their briefing on the motion to quash Governor Quinn's deposition—is not persuasive. *See* Dckt Nos. 226, 254. According to the Defendants, the reasoning behind Governor Quinn's commutation is relevant because Plaintiffs have argued that Governor Quinn made the decision to commute Plaintiff Hood's sentence because he thought Mr. Hood was innocent; and that that decision "set in motion the events directly leading directly to the reversal of the convictions." Dckt No. 226, at 12. The Defendants offer no citation for how it is that *commuting* a sentence equates to reversing a conviction, or how a commutation can be a dismissal in a manner indicative of innocence. Indeed, the case that the Defendants rely on—*Evans v. City of Chicago*, 231 F.R.D. 302, 307 (N.D. Ill. 2005)—involved a completely different set of facts because there the plaintiff had been pardoned by the Governor on the basis of innocence. *Id.* And that pardon, of course, not only opened the courthouse gates, *see Walden v. City of Chicago*, 755 F. Supp. 2d 942, 955 (N.D. Ill. 2010), but also could be construed as a dismissal "indicative of innocence." There is no such claim here with regard to Governor Quinn's granting Mr. Hood clemency.

---

[6] And thus it is not a situation where Defendants might be on the hook for increased damages because of something that Mr. Hood did. The commutation reduced Mr. Hood's damages, not the other way around.

7

There is also no evidence that Governor Quinn's commutation triggered the State's Attorney to act. To the contrary, at least according to the public record, the State's Attorney was highly critical of Governor Quinn's actions, asserting that she was "'deeply disappointed' with Quinn's decisions Monday, particularly in the Johnson, Morgan, Dansberry and Hood commutations." Ex. J ("Quinn Commutes Sentence of Man Convicted of Lying in Murder Case," at https://chicago.cbslocal.com/2015/01/13/quinn-commutes-sentence-of-man-convicted-of-lying-in-murder-case/).

Plaintiff recognizes that this Court found Governor Quinn's decision-making relevant in the court's prior order regarding Governor Quinn's deposition. Dckt No. 247. But that was because the Court, without the benefit of briefing by the Plaintiff, believed Plaintiff was relying on Governor Quinn to prove Plaintiff's innocence; that is, however, not the role that the commutation has in this case. The commutation is relevant to show Plaintiff's damages—the steps that he took to try to secure his freedom from prison—but it is not the basis for Plaintiff's claim of innocence. Indeed, Governor Quinn's subjective belief about whether Plaintiff is or is not innocent is pure speculation: He has no firsthand knowledge of the murder of Marshall Morgan, Jr. and cannot usurp the role of the jury by telling them how to evaluate the evidence presented. *See In re Gen. Instrument Corp. Sec. Litig.*, No. 96-1129, 2000 WL 1741937, at *3 (N.D. Ill. Nov. 22, 2000) (refusing to consider lay witness testimony under FRE 701 where witness did not have "first hand knowledge or observation").

Given the fact that Governor Quinn's testimony is not probative as to Plaintiff's innocence—nor does Plaintiff intend to present it to show his innocence—it also cannot be relevant to show that Plaintiff is not innocent. That is, and for the same reasons above, the Defendants cannot use Governor Quinn's failure to grant Mr. Hood a pardon as probative evidence of Plaintiff's guilt.

8

If evidence of *why* Governor Quinn acted as he did is not relevant, then certainly any communications that Ms. Nagao may or may not have had with the Governor's Office are not relevant either (and her communications with the media or anyone else who supposedly influenced Governor Quinn are doubly irrelevant). Of course, there has been no evidence that those communications had any impact on what the Governor did or did not do, but that is beside the point. All communications with the Governor are irrelevant because Defendants cannot establish that the Governor's reasoning is tied to any issue to be tried in this case.

That leaves the State's Attorney. Although the basis for the State's Attorney's decision to dismiss the charges against Plaintiff is relevant, the Defendants have not even sought to depose the State's Attorney or any of the Assistant State's Attorneys who were involved in that decision. And, the record established thus far demonstrates that none of Ms. Nagao's social media postings, communications with the Governor or Mr. Schmidle—or even Mr. Schmidle's article—had any bearing on the prosecutor's decision-making. To the contrary, the Cook County State's Attorney's Office explained that "[e]very available piece of information and evidence was pursued and examined," and "[a]fter a final analysis," in which "my assessment [was] that we do not have sufficient confidence in these convictions and therefore cannot allow them to stand," charges against Plaintiffs were dismissed. Ex. K (O'Connell, "Murder Conviction Dismissed for Man who Spent 22 Years in Prison," *Chicago Tribune*, at https://www.chicagotribune.com/news/breaking/ct-tyrone-hood-conviction-dismissed-met-0210-20150209-story.html). Indeed, the Conviction Integrity Unit evaluated Mr. Hood's case for years before this decision was made, and continued to evaluate and re-evaluate the case as new information became available. As such, whatever contacts Plaintiff's legal team, and Ms. Nagao in particular, may have had with the media are irrelevant to whether and why Plaintiff's conviction was overturned and the charges were dismissed—and whether that was done in a manner indicative of Mr. Hood's innocence. *See Swick*, 169 Ill.2d at 513.

9

Finally, the Defendants are also seeking to depose Ms. Nagao about setting up, attending and speaking at a panel for students held by the University of Chicago Law School regarding Mr. Hood's case. It is hard to fathom that any testimony about an educational program would be discoverable or relevant—let alone testimony from the paralegal involved. The Defendants have offered no explanation for how this school panel could be relevant—instead, by Defendants' logic, anytime the word "Tyrone" was uttered by any person involved in any way with this case, that would automatically make testimony by that person relevant. That, however, is not what Rule 26 permits. *See In re Heartland Inst.*, No. 11 C 2240, 2011 WL 1839482, at *3 (N.D. Ill. May 13, 2001) (quashing third party subpoenas as overbroad where court found that "[s]ince Plaintiffs' use of the information to be gleaned through their discovery requests is purely hypothetical and tangential, the requests clearly do not go to the heart of the matter in the underlying litigation.").

At bottom, the Defendants are not seeking Ms. Nagao's deposition to explore Plaintiff's malicious prosecution claim and rebut a defense to the "dismissed in a manner indicative of innocence" prong. Rather, Defendants are engaged in a fishing expedition in the hopes of digging up mud to sling. , *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 931 (7th Cir. 2004) ("[P]retrial discovery is a fishing expedition and one can't know what one has caught until one fishes. But Fed. R. Civ. P. 45(c) allows the fish to object, and when they do so the fisherman has to come up with more than the government has been able to do in this case . . . ."). To accomplish that, the Defendants are asking this Court to depose a paralegal on the off-chance that communications she had with a reporter led to an article, which caused Governor Quinn to commute Hood's sentence, which caused the prosecutor to dismiss the charges—all without a scintilla of evidence that any of these links in the chain are true, and the anticipated testimony is irrelevant regardless. Indeed, the fact that the Defendants have not even sought to discover the basis for the State's Attorney's decision to dismiss charges—the ultimate and critical link in the chain—makes plain that this subpoena and

attendant deposition and document requests are not designed to explore Plaintiff's damages and malicious prosecution claim. To the contrary, the Defendants' subpoena is aimed at a different purpose—to distract the jury with an irrelevant sideshow about the media and about whether Plaintiff's post-conviction counsel manipulated the media to secure Mr. Hood's release. Not only is this fake news, it has nothing to do with the merits of the case and should be quashed. *See Gordon v. Phar-Mor, Inc.*, No. 99-1695, 2000 WL 127501, at * 1 (8th Cir. 2000) ("We also find that the district court did not abuse its discretion in quashing the subpoena served on Phar-Mor's attorney, whose testimony would have been irrelevant to Phar-Mor's liability or Ms. Gordon's damages.").

### b. Even if it Were Relevant, the Subpoena Seeks Cumulative Information and is Overbroad

Even if were the case that testimony from Ms. Nagao was somehow relevant, which it is not, the Defendants already have this information from other sources, making it cumulative.

First, Defendants have already deposed two members of Plaintiff's legal team. In particular, Defendants questioned Mr. Leonard, Plaintiff's post-conviction attorney who currently represents Mr. Hood in his certificate of innocence proceedings, at length about his contact with Mr. Schmidle, Ms. Ferguson and other reporters during the time period leading up to Governor Quinn's commutation and the CCSAO's dismissal of criminal charges. Defendants also questioned Mr. Leonard about the University of Chicago panel provided as an educational experience to law students about the law school's clinics at which Mr. Hood, Governor Quinn and Ms. Nagao also participated as panelists. Ms. Nagao's testimony on these same topics are cumulative of discovery already obtained from a highly unusual deposition of one of Mr. Hood's current lawyers.

Second, the information requested is duplicative of information that the Defendants have already sought—and received—in written discovery. For example, the subpoena rider seeks "Any material regarding the November 19, 2015 panel discussion." Ex. I (Subpoena to Ms. Nagao with attached Rider). Notably, in 2018, the Defendants subpoenaed the Exoneration Project for the exact

11

same material: "communications," "audio and video recordings and photographs," and "notes, memoranda, handouts, PowerPoint presentations, pamphlets and any other documents provided to participants, panelists and /or audience members at the panel discussion." Ex. L (Subpoena to Exoneration Project with attached Rider). Similarly, the subpoena to Ms. Nagao asks for "[c]ommunications with and documents you provided to former Governor Patrick Quinn and his staff" while the prior subpoena to the Exoneration Project requested "any and all documents referring or relating to Governor Quinn's grant of clemency to Tyrone Hood, attached as Exhibit B." Ex. I (Subpoena to Ms. Nagao with attached rider); Ex. L (Subpoena to Exoneration Project with attached Rider) (bolded emphasis removed).

As such, the subpoena seeks oral and written discovery that the Defendants have already received in discovery, and seeking yet-another deposition of a member of Mr. Hood's legal team is cumulative. *See Parker*, 291 F.R.D. at 188 (quashing the plaintiff's subpoena served upon a non-party because the documents sought were duplicative, the requests were invalid as overly broad, burdensome, irrelevant or previously could have been the subject of discovery); *Ameritox Ltd. v. Millennium Labs, Inc.*, No. 12 CV 7493, 2012 WL 6568226, at *2-3 (N.D. Ill. Dec. 14, 2012) (granting a motion to quash nonparty subpoenas "because the requests are cumulative and duplicative of discovery requests made to the party to the litigation").

### c. Work Product Covers Much of What Defendants Would Seek to Question Ms. Nagao About

Additionally, to the extent that the Defendants are seeking to probe into Plaintiff's counsel's strategy for litigating this matter, that inquiry would be protected by the work product privilege. The Defendants obliquely suggested that the privilege would not extend to Ms. Nagao because she is neither an attorney nor an investigator, but have cited no law for such a claim. That is because the law is to the contrary. *Fine v. Facet Aerospace Products Co.*, 133 F.R.D. 439, 445 (S.D.N.Y. 1990) ("Finally, the work product of a paralegal is subject to Rule 26(b)(3), whether the paralegal is viewed

12

as an extension of the attorney or as another representative of the party itself."); *Domingo v. Donahoe*, C-11-05333CRB (EDL), 2013 WL 4040091, at *5 n.1 (N.D. Cal. Aug. 7, 2013) ("The Court rejects Plaintiff's argument that this communication is not privileged because Ms. di Mambro is not an attorney. She is a paralegal for the USPS Law Department, and not only does the attorney-client privilege extends to third parties who assist an attorney, but work product protects documents prepared by a party or its agent regardless of whether that agent is an attorney."); *Jordan v. U.S. Dept. of J.*, CIV. 07-CV-02303-REB, 2009 WL 2913223, at *22 (D. Colo. Sept. 8, 2009), *aff'd*, 668 F.3d 1188 (10th Cir. 2011) ("Next, Plaintiff challenges Defendant BOP's redaction of documents prepared by paralegals on the grounds that the attorney work-product privilege does not extend to nonattorneys. Here Plaintiff is plainly wrong.")

Alternatively, Plaintiff anticipates that the Defendants will claim that Ms. Nagao waived whatever work product privilege might apply to her testimony by speaking to law students at the University of Chicago panel about Mr. Hood's case. That too fails: Ms. Nagao's discussion on the panel was limited, and to the extent she talked about contact with the media or seeking clemency for Mr. Hood, she did so for educational purposes—and not for a strategic or tactical advantage. In those circumstances, the courts have not found waiver. *Eq. Residential v. Kendall Risk Mgt., Inc.*, 246 F.R.D. 557, 570 (N.D. Ill. 2007) ("Equity did not disclose these documents for tactical purposes, nor does it appear it withheld any incriminating documents on the same subject matter for its advantage. Thus, the Court will not apply subject matter waiver to the documents that Equity otherwise disclosed in good faith.")

Indeed, it is unusual to seek to depose a party's paralegal—particularly given the fact that Plaintiff has not listed that paralegal as a witness in this case, or otherwise put her testimony at issue. *See Fields v. City of Chicago*, No. 10 C 1168, 2012 WL 4892392, at *3 (N.D. Ill. Oct. 15, 2012) ("The deposition by one party of the other side's attorney in the litigation (or, by extension, the

13

attorney's paralegal) is disfavored and should be permitted only if there is no other reasonable means to obtain relevant and significant information that the attorney possesses."). Certainly, doing so is a last resort—and one that can be avoided by other mechanisms for discovery. *Id.*[7] Here, as noted above, the Defendants already have those other mechanisms: written emails and discovery from other witnesses—Renee Ferguson, Governor Quinn—who can testify about their interactions, if they had any, with Ms. Nagao.

### 3. The Deposition Should be Quashed Because it is Harassing

Having shown that there is no relevant information, let alone new information that the Defendants can uncover during this deposition makes clear that it is being sought not as an engine to uncover Rule 26 material, but instead to harass Plaintiff and his legal team. Defendants have already deposed two members of Plaintiff's legal team, Mr. Leonard and Mr. Smith. Defendants are targeting members of Plaintiff's legal team and attempting to pierce Plaintiff and counsel's privilege. At these two depositions conducted on July 23 and 25, 2019, counsel attempted on numerous occasions to argue waiver of Plaintiff's privilege. In other words, despite representations that they seek what Defendants consider to be non-privileged information, their conduct at these depositions indicate that Defendants' understanding of what is privileged or waived includes information that is standard work product—*e.g.*, conversations with witnesses, legal strategy, and the identity of the

---

[7]  Permitting such depositions has a slippery slope. If the Defendants truly believe it is appropriate to depose Plaintiff's legal team to uncover their strategy and efforts to prove Plaintiff's innocence, then it seems as though it would be equally appropriate to depose defense counsel to uncover their efforts to prove Plaintiff's guilt; notably, their (failed) efforts to intervene in Plaintiff's pending Certificate of Innocence ("COI") litigation. Indeed, such efforts might demonstrate the Defendants' bias, tunnel vision and ongoing conspiracy to deprive Plaintiff of the evidence he needs to prove—once and for all—that he had nothing to do with the murder of Marshall Morgan, Jr. Such discovery could include depositions of the paralegals, investigators and/or attorneys involved in those COI proceedings, along with communications between and among counsel for the Defendants and members of the Cook County State's Attorney's Office and Special Prosecutor's Office.

person who drafted a particular pleading. *See, e.g.*, Ex. M (Leonard Dep.) at 31:23-32:7 ("Did you draft the appellate brief . . . that was filed in support of Mr. Hood's appeal on the petition for a COI?"); Ex. G (Smith Dep.) at 128:12-17; *id.* at 107-109 (asking about statements Jody Rogers made to Mr. Smith). Worse yet, the Defendants tried to use the depositions as an end-run around this Court's rulings regarding privilege. For example, although this Court had already precluded the Defendants from using or inquiring about a draft affidavit regarding Wayne Washington, defense counsel tried to elicit such testimony from Mr. Leonard. Ex. M (Leonard Dep.) at 41:6-22 (asking who drafted the Jody Rogers and Wayne Washington affidavits).

Given the circumstances of this case—serving the subpoena just days before the close of fact discovery with very little time for compliance; seeking information that is irrelevant, and duplicative of other discovery; and trying to pierce the work product privilege—it is apparent that the Defendants' intent of serving this subpoena is to harass. *See Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 67 (1st Cir. 2003) (quashing subpoena of opposing counsel that was served the day before trial, requesting eighteen categories of documents without making any showing that the evidence was available from other sources, and seeking testimony that was cumulative). This Court should not countenance such gamesmanship.

## Conclusion

For all of the reasons cited above, this Court should quash the subpoena served on Ms. Nagao.

WHEREFORE, Plaintiff Tyrone Hood seeks an order from the Court quashing the deposition subpoena a document rider served on Ms. Nagao.

Respectfully Submitted,

<u>Gayle Horn</u>
*Attorney for Plaintiff Tyrone Hood*

Jon Loevy
Heather Lewis Donnell
Gayle Horn
Katie Roche
Scott Drury
Loevy & Loevy
311 North Aberdeen, 3rd Floor
Chicago, Illinois, 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

I, Gayle Horn, an attorney, certify that on August 13, 2019, I caused the foregoing Plaintiff Tyrone Hood's Motion to Quash Defendant City of Chicago's Subpoena for Third-Party Witness Eva Nagao's Deposition and Rider for Production of Documents to be served to all counsel via the Court's CM/ECF electronic filing system.

/s/ Gayle Horn
*Attorney for Plaintiff Tyrone Hood*

16